**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **PROPER FOOTWEAR, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v** | § | |
| | § | |
| **RONALD CHISM,** | § | **COMPLAINT FOR DECLARATORY** |
| **Defendant.** | § | **RELEF** |

## PLAINTIFF'S REQUEST FOR DECLARATORY RELIEF

Plaintiff PROPER FOOTWEAR, LLC ("Plaintiff" or "Proper"), by and through its

undersigned counsel, complains of Defendant RONALD CHISM ("Defendant" or "Chism") and

alleges as follows:

### I.      NATURE OF THE ACTION

1.      This case involves the American with Disabilities Act ("ADA") and California's

Unruh Civil Rights Act. These acts were intended to provide relief to disabled persons who are

unfairly denied access to public places such as restaurants, stores, sport and entertainment venues,

office buildings, and the like. Tragically it has also become a vehicle for legal extortion that—

instead of helping the disabled—preys on businesses by weaponizing fear of hefty penalties and

exorbitant legal fees. A Central District of California opinion discussing the phenomenon is almost

chilling in its applicability to the cases:

> "The ability to profit from ADA litigation has given birth to what one Court
> described as "a cottage industry." *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d
> 1278, 1280-81 (M.D. Fla. 2004). The scheme is simple: an unscrupulous law firm
> sends a disabled individual to as many businesses as possible, in order to have him
> aggressively seek out any and all violations of the ADA. Then, rather than simply
> informing a business of the violations, and attempting to remedy the matter through
> "conciliation and voluntary compliance," id. at 1281, a lawsuit is filed, requesting
> damage awards that would put many of the targeted establishments out of business.
> Faced with the specter of costly litigation and a potentially fatal judgment against
> them, most businesses quickly settle the matter. The result of this scheme is that

> "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004). Serial plaintiffs ... serve as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." *Rodriguez*, 305 F. Supp. 2d at 1285. It is a "type of shotgun litigation [that] undermines both the spirit and purpose of the ADA." *Brother*, 331 F. Supp. 2d at 1375."

*Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 863 (C.D. Cal. 2004), aff'd in part, dismissed in part sub nom. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007). Plaintiff's plight is just such a case. Unfortunately, California's liberal courts and legislation have created fertile ground for this type of mud raking.

## II.     JURISDICTION AND VENUE

2.     This Court has original federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1331 because the claims arise under the laws of the United States, specifically under Section 12182 of the Americans with Disabilities Act, 42 U.S.C. § 12182.

3.     This Court also has supplemental jurisdiction under 28 U.S.C §1367 to hear Plaintiff's other causes of action, all of which are so related that they form part of the same case or controversy under Article III of the United States Constitution.

4.     This Court has personal jurisdiction over the Defendant as Defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8 (1984). This Court further has jurisdiction under *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

5.     Mr. Chism intentionally sought out and accessed Proper's website in order to (1) order goods that Proper sells or (2) verify its compliance with the ADA. Proper is a limited liability company duly formed under the laws of the State of Texas and has its principal place of business in Texas. Proper begins product shipment from its warehouse in Texas. Furthermore, Defendant

Chism sent a demand letter to Proper, threatening a lawsuit, and making a demand for $4,000 for each of several instances where Chism allegedly could not access the website. Because it was Defendant Chism who, using the Internet, sought out Proper, a Texas entity, and sent a demand letter to Proper, threatening suit, Chism subjected himself to the personal jurisdiction of Texas courts. *See Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*, 923 F. Supp. 950, 956 (S.D. Tex. 1996) (holding sending of demand letter created sufficient "minimum contacts" for purposes of specific personal jurisdiction); *see also Memorial Hosp. System v. Fisher Ins. Agency*, 835 S.W.2d 645, 651 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding one single telephone call constituted sufficient "minimum contacts" to subject a nonresident defendant to personal jurisdiction in the state of Texas); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332–34 (5th Cir.1982), cert. denied, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983) (holding a mere telephone call provided enough "minimum contacts" to justify the imposition of personal jurisdiction over the nonresident placing the call); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (mailing of an insurance contract from Arizona to California created sufficient "minimum contacts" to subject a nonresident entity to specific personal jurisdiction in California).

6.      Venue in this Judicial District is proper under 28 U.S.C. § 1391(b). Venue in this Judicial District is proper under 18 U.S.C. § 1965(b).

### III.    PARTIES

7.      Plaintiff Proper Footwear, LLC ("Proper") is a Texas limited liability company with its principal place of business located at 250 W 19th St., Suite C, Houston, Texas 77008.

8.      Defendant Ronald Chism ("Chism"), is an individual who resides in California and may be served through his counsel of record, Olga Nazimova, or wherever he may be found.

## IV.    FACTS

9.      Plaintiff Proper is a business engaged in selling "sneaker and streetwear" brands. Proper maintains two store fronts, one in California and another in Texas. Proper also maintains a separate business website where consumers may view the collection of items Proper is selling and order them online.

10.      Other than the store front in California, Proper operates out of Texas. Proper maintains a fulfillment center and warehouse in Texas that fulfills internet orders. Consumers who put in orders online, such as Mr. Chism, are processed by an electronic commerce manager. When a customer purchases something online, it pulls the goods from the warehouse first, then the Houston store location, and then the California location. There are items that are only available in the Houston or California stores, so if a customer orders that particular item it will ship directly from that location. Customers that order multiple items from different locations will receive different packages from each location.

11.      On or about October 19, 2020, Proper received a demand letter from the Law Office of Olga Nazimova on behalf of Defendant Chism stating that the website Proper maintains is not compliant under the ADA and California's Unruh Civil Rights Act. Specifically, Chism states that he was prevented on multiple occasions from fully accessing Proper's website because it is not fully accessible to persons with blindness or visual impairment, preventing him from being able to enjoy the goods and services offered by Proper. Chism claims he encountered various barriers, including but not limited to undescriptive links and tags and missing alternative text preventing him from deciphering and/or navigating the website as other sighted individuals could. Chism further claimed that the Job Access With Speech ("JAWS") program, a screen reader program utilized by many blind users, was unable to properly interact with Proper's website to

allow usage of the website, making the website unusable. He claims this is a violation of the ADA and the Unruh Act.

12.      Chism claims to have investigated the matter further and allegedly confirmed that Proper's website was "in fact" inaccessible to persons with blindness and/or visual impairment. He further claims he had a consultant review the website and run various website accessibility programs and concluded that, as confirmed by the Website Accessibility Evaluation tool, ("WAVE") and other evaluation tools, Proper's website contains numerous accessibility barriers which prevent blind/visually impaired individuals from fair and equal enjoyment of the goods and services provided by Proper.

13.      Chism claims that these deficiencies deny him "full and equal enjoyment of the[ir] goods, services, facilities, privileges, advantages, or accommodations" in violation of the ADA. He threatens suit unless paid $4,000 for "each of several instances" in which he was deprived of his ability to access the site.

14.      Chism never offered Proper an opportunity to bring its website into compliance without first seeking $4,000 for each instance he was unable to access the site. In fact, Chism did not, after the first such instance, notify or offer Proper a chance to make changes. Instead, he made repeated access attempts, hired counsel who in turned hired a specialist to examine the site, and then made a demand for damages.

## VI.      REQUEST FOR DECLARATORY RELIEF

15.      Plaintiff hereby adopts and re-alleges the allegations previously set forth in this Complaint as if fully set forth herein.

16.      Plaintiff seeks a declaration, pursuant to 28 U.S.C.A. § 2201 that:

*Plaintiff's Request for Declaratory Relief*

a.     Proper's website is compliant with the ADA or, alternatively, that the ADA does not apply to websites; and

b.     The ADA preempts the Unruh Act under these facts.

**A.     ADA**

17.     The ADA is clear when it states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a ***place of public accommodation***." 42 U.S.C. §12182(a). The ADA states that private entities are considered public accommodations if the operations of such entities affect commerce and lists the following:

(A)     an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B)     a restaurant, bar, or other establishment serving food or drink;

(C)     a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D)     an auditorium, convention center, lecture hall, or other place of public gathering;

(E)     a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F)     a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G)     a terminal, depot, or other station used for specified public transportation;

(H)     a museum, library, gallery, or other place of public display or collection;

(I)     a park, zoo, amusement park, or other place of recreation;

(J)     a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K)     a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L)     a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). However, the statute does not define what a "place of public accommodation" is. The Department of Justice has adopted the above as the definition of "place of public accommodation". 28 C.F.R. §36.104.

18.     Many plaintiffs argue that "other service establishment" as used in 42 USC § 12181(7) is broad enough to encompass a website. However, the circuits are split, and the argument ignores Fifth Circuit precedent requiring that a place of public accommodation be a physical place. See *Magee v. Coca-Cola Refreshments USA, Incorporated*, 833 F.3d 530, 534-36 (5th Cir.). *See, e.g., Earll v. eBay, Inc.*, 599 Fed. Appx. 695, 696 (9th Cir. 2015) (the term "place of public accommodation" requires some connection between the good or service alleged to be discriminatory and a physical place); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998) (finding that the term public accommodation does not refer to non-physical access); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) (stating that a public accommodation is a physical place); *Haynes v. Dunkin' Donuts LLC*, 2018 WL 3634720, at *2 (11th Cir. July 31, 2018); *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1349 (S.D. Fla. 2017). In *Magee*, the 5th Circuit adopted the principals of *noscitur a sociis*, "a word is known by the company it keeps", and *ejusdem generis*, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Id.* at 534.

19.     Applying those principals, the Court goes on to analyze the statute and agrees with other circuit courts that every item listed in the statute is a ***physical place open to public access***. *Id*. The Court then defines the common meaning of the term "establishment" and "sales establishment" to include not only a business but also the physical space that it occupies. *Id.* The Court adopted the dictionary definition of "establishment" and "place" to mean a physical location. *Id.* at 534-35.

20.     Just as vending machines in *Magee* were dissimilar from the other public accommodations listed before "other sales or rental establishment" in § 12181(7)(E), a website is different from the places of public accommodation listed before "other service establishment" in § 12181(7)(F). See *Zaid v. Smart Financial Credit Union*, No. H-18-1130, 2019 WL 314732, at *6 (S.D. Tex., Jan. 24, 2019). Each of the public accommodations listed in § 12181(7) are physical places. Proper's website does not have a distinct physical place of business. While websites may be affiliated with brick-and-mortar businesses that are places of public accommodation, that does not render the businesses' websites themselves places of public accommodation. *Id.*

21.     Because a website is not a place of public accommodation under the ADA, Proper cannot be liable for its website's alleged failure to comply with the ADA.

**B.     Unruh Civil Rights Act**

22.     California's Unruh Civil Rights Act states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

23.     The statute goes on to state that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal Civ. Code § 51(f). Furthermore, "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Cal Civ. Code § 52(a).

24.     Here, as shown in *Zaid*, Proper has not violated the ADA. Therefore, Mr. Chism must establish a violation of the Unruh Act independently. To show a violation of the Unruh Act independent of a claim under the ADA, he must "plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Greater Los Angeles Agency on Deafness et al. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir.) (quoting *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 94 Cal.Rptr.3d 685, 208 P.3d 623, 627 (2009)). The Unruh Act contemplates "willful, affirmative misconduct on the part of those who violate the Act" and therefore a plaintiff must allege, and show, more than the disparate impact of a facially neutral policy. *Id.* (citing *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 31 Cal.Rptr.3d 565, 115 P.3d 1212, 1228–29 (2005)). Mr. Chism cannot meet this standard.

25.     California federal courts have started to refuse exercising their jurisdiction over Unruh violations paired with violations of the ADA. See e.g. *Organization for Advancement of Minorities with Disabilities v. Brick Oven Restaurant*, 406 F.Supp.2d 1120, 1131 (S.D. Cal. 2005); *Schutza v. Cuddeback*, 262 F.Supp.3d 1025, 1029-31 (S.D. Cal. 2017); and *Schutza v. Enniss*

*Family Realty I LLC*, Case No.: 20-CV-0298 W (JBL), 2020 WL 3316969 at *2 (S.D. Cal. Jun. 18, 2020). The reason being that the Unruh claims "substantially predominate" over the ADA claims. *Id.* Although, the ADA does not entitle Plaintiff to recover damages, most complaints seek the statutory damages under the Unruh Act—even though the Unruh Act provides for the same injunctive relief available under the ADA. See *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) ("It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act."); see also *Molski v. EOS Estate Winery, No.* CV 03-5880-GAF, 2005 WL 3952249, at *4 (C.D. Cal. July 14, 2005) (noting that "[s]ince the state law claims provide for injunctive relief, the federal claim adds nothing to the lawsuit that could not be obtained in Superior Court"). The ADA claims appeared to be secondary claims used to justify filing in federal court. As such, the state claim substantially predominates over the ADA claim. See *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224 (S.D. Cal. 2007) ("Given the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of 28 U.S.C. § 1367(c)(2)."); *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2005) (finding that disparity between monetary damages and injunctive relief lifts state claims over federal claims).

26.     Second, the Courts have ruled that the principles of comity and fairness weigh heavily in favor of declining supplemental jurisdiction because allowing a Plaintiff to bootstrap his Unruh Act claim onto an ADA claim for the sole purpose of avoiding California's procedural rules would allow Plaintiff the enjoyment of those parts of California law that benefit him while disallowing the parts purposefully enacted to protect Defendants. *Schutza v. Enniss Family Realty*

*I LLC*, Case No.: 20-CV-0298 W (JBL), 2020 WL 3316969 at *3 (S.D. Cal. Jun. 18, 2020). Some Courts note that the sole purpose for attaching an ADA claim is to get state claims into federal court and consider it forum shopping. *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2005)

27.     Defendant's interpretation of the ADA and its regulations is inconsistent with the controlling precedent and purports to obligate Proper to follow requirements that are unsupported by precedent.

28.     Accordingly, an actual or substantial controversy exists between Plaintiff and Defendant as to their respective legal rights and duties.

29.     This dispute is ripe. As set forth above, on information and belief, Defendant intends to file a civil action based on alleged violations of the ADA and the Unruh Civil Rights Act, and Plaintiff disputes the factual and legal basis for such action.

30.     A declaration would clarify and settle the parties' legal obligations under the text of the ADA and its implementing regulations.

31.     Plaintiff is thus entitled to declaratory relief as set forth below.

### V.     PRAYER

**WHEREFORE,** Plaintiff prays that the court:

1. Declare that:

    a.  Proper's website is compliant with the ADA or, alternatively, that the ADA does not apply to websites; and

    b.  The ADA preempts the Unruh Act under these facts.

2. Award costs and attorneys' fees to Plaintiff; and

3. Grant such other relief as may be just and proper.

*Plaintiff's Request for Declaratory Relief*

Respectfully submitted,

THE VETHAN LAW FIRM, P.C.

By: /s/ Charles M.R. Vethan
    Charles M.R. Vethan
    Texas Bar No. 00791852
    Cameron Weir
    Texas Bar No. 24088616
    Jens K. Sandberg
    Texas Bar No. 24105252
    820 Gessner Road, Ste. 1510
    Houston, TX 77024
    Telephone: (713) 526-2222
    Facsimile: (713) 526-2230
    Email: cvethan@vethanlaw.com
    Service email: edocs@vwtexlaw.com

***Attorneys for Plaintiff***
***Proper Footwear, LLC***